IN THE MATTER OF CHARLES W. VINCENT.

[No. 476S122. Filed March 30, 1978.]

*Thomas J. Campbell,* of Indianapolis, for respondent.

*Sheldon A. Breskow, David L. Copenhaver,* of Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on an orally amended Verified Complaint filed by the Disciplinary Commission of the Indiana Supreme Court pursuant to Admission and Discipline Rule 23, Section 12. A Hearing Officer was appointed, the cause was heard, and the Hearing Officer has filed his findings of fact and conclusions of law. Respondent now petitions this Court for review. Both parties have filed briefs in this cause.

In the complaint filed in this cause the Respondent is charged with violating Disciplinary Rules 1-102(A)(1) and

(5), 6-101(A)(3) and 7-101(A)(2) of the Code of Professional Responsibility and the *Oath of Attorneys* for members of the Indiana State Bar. During the hearing of this matter, prior to receiving evidence or testimony, the Disciplinary Commission orally moved that the complaint be amended to provide that the Respondent, while engaged in the conduct alleged in the complaint, represented parties having adverse interests, drafted a title insurance policy which was intended to and did, in fact, mislead the insured as to the status of real estate, failed to retain the identity of client's funds entrusted to the Respondent and expended these funds in payment of a personal debt. The Respondent specifically waived any procedural or substantive right afforded him by reason of the orally alleged misconduct and at this stage of the proceeding does not challenge this amendment.

After examining all matters which have been submitted in this cause, this Court now finds that on April 28, 1972, Roberta and James Crowe purchased a house in Terre Haute, Indiana. The purchase was financed by way of a note and mortgage in the favor of Federal Housing Authority (FHA) with Pfister Real Estate Company (Pfister) as the servicing agent for FHA. Shortly thereafter, a second loan (for the construction of a swimming pool on the property) was obtained from The Associates Service Corporation. This second loan was also arranged through Pfister and payments were to be made to Pfister. The Associates took a second mortgage to secure the loan and insured this second mortgage with First Federal Insurance Corporation (First) (currently doing business as United Guaranty Insurance Corporation).

Due to marital and financial difficulties, in the early part of 1973, the Crowes listed their house for sale with Pfister. The house remained unsold until early 1974. At this time, James Crowe, now divorced from Roberta, sought advice from Pfister how best to dispose of the property. It was suggested that a deed be executed to FHA in lieu of foreclosure. Pfister further advised Crowe to stop making payments and

that they would contact him when the transaction had been arranged.

Several months later Crowe contacted Pfister to discover the progress of the transaction. He was referred by Pfister to their attorney, the Respondent. Respondent advised Crowe that such matters took time and that he would contact him in the near future. In subsequent conversations the Respondent advised Crowe that the deed and transfer were being delayed by the second mortgage, which had to be released before FHA would accept the deed in lieu of foreclosure.

On April 18, 1974, Pfister authorized the Respondent to commence a foreclosure action against Crowe. Additionally, after Crowe stopped making payments, Pfister, on behalf of Associates, filed a claim with First who honored the claim and thereby was assigned the second mortgage and note.

In late 1974 or early 1975, the Respondent began discussions with First in an attempt to negotiate a settlement and advised Crowe that he could represent him in such discussions. Crowe assented to this representation. Eventually, First agreed to accept One Thousand Dollars ($1,000.00) as consideration for release of the second mortgage.

On February 27, 1975, Crowe telephoned the Respondent and at that time was first advised of the agreement. The Respondent instructed Crowe to bring One Thousand, One-Hundred and Fifty Dollars ($1,150.00) in cash to the Respondent's office on March 1, 1975; the additional One Hundred Fifty Dollars ($150.00) was for attorney's fees. Crowe did as instructed and was further advised that the money would be forwarded to First.

The One Thousand Dollars ($1,000.00) was deposited in the Respondent's escrow account. On March 3, 1975, Respondent informed First that the money would be forwarded along with a mortgage release form. In the following months, First contacted the Respondent on numerous occasions, but

still the money was not sent. Sometime during the Spring or Summer, the Respondent withdrew at least Six Hundred Dollars ($600.00) from his escrow account and applied this sum toward a personal debt. The escrow account never again reached One Thousand Dollars ($1,000.00).

After failing to get Respondent to forward the One Thousand Dollars ($1,000.00), First referred this matter to their attorney who in turn drafted a letter to Respondent on September 2, 1975. Receiving no answer, First's attorney drafted a second letter on September 29, 1975, indicating that a disciplinary grievance would be filed if the One Thousand Dollars ($1,000.00) was not forthcoming.

On October 17, 1975, the Respondent purchased, with funds from a personal account, a cashier's check for One Thousand Dollars ($1,000.00), payable to United Guaranty Insurance Company (United). This was formerly "First". Respondent believed that the check was mailed to, received by, and eventually negotiated by United.

On December 9, 1975, Respondent received notice of a grievance filed by United. Upon investigation he found that the October cashier's check had never been negotiated and accordingly the Respondent stopped payment. He immediately had a new cashier's check drawn, payable to the same parties, but retained possession of this second cashier's check.

Respondent then drafted a warranty deed conveying the Terre Haute property from the Crowes to the Department of Housing and Urban Development, (FNMA). This deed was signed by the grantors on January 3, 1976. Respondent informed the grantors that all matters concerning the property were concluded. No mention was made as to the One Thousand Dollar ($1,000.00) check at that time in possession of the Respondent nor the grievance filed by United.

On January 16, 1976, Respondent telephoned United and asked whether or not there still was an agreement. United indicated that they would accept the check and release the

mortgage on receipt. On the same date Respondent, as an agent for St. Paul Title Insurance Company, prepared a title insurance policy covering the Terre Haute property insuring this property against "any defect in or lien or encumbrance on the title." This policy made no mention of the second mortgage although Respondent knew of the existence of such encumbrance. This property was conveyed on June 8, 1976, by FNMA by way of a special warranty deed. Again no mention was made of the existing second mortgage.

This Court further finds that the Respondent was admitted to the practice of law on September 16, 1959. He engaged in the full time practice of law for nearly sixteen years. In May 1975, the Respondent was hospitalized for three days by reason of a heart arrhythmia. At that time the Respondent was placed on medication. Respondent gradually reduced the dosage of this medication. Additionally, at the same time Respondent was having alcohol related problems. In February 1976, the Respondent left the private practice of law and has since been employed as a Deputy Attorney General for the State of Indiana.

In his petition for review the Respondent admits that his conduct violated Disciplinary Rules 6-101(A)(3) and 9-102 (A). This Court now concludes that by failing to transmit One Thousand Dollars ($1,000.00) to First Federal and by failing to obtain the release of the second mortgage on the above noted property, the Respondent did neglect a legal matter entrusted to him and accordingly violated Disciplinary Rule 6-101(A)(3). We further conclude that by withdrawing Six Hundred Dollars ($600.00) from his escrow account the Respondent did fail to preserve the identity of funds of a client thereby violating Disciplinary Rule 9-102(A).

In his petition for review Respondent asserts that the evidence is not sufficient to establish an intentional failure to carry out his contract of employment with Crowe. Respondent argues that he neglected this matter due to poor health, ex-

cessive use of alcohol, and the significant side effects of prescribed medication and thereby concludes that a conscious intent not to carry out the contract of employment was not present.

Disciplinary Rule 7-101(A)(2) provides that a lawyer shall not intentionally fail to carry out a contract of employment. The concept of intent, however, is not unique within the parameters of a disciplinary proceeding; this type of consideration has been repeatedly made in almost every type of judicial proceeding. It is well established that although intent is a subjective, mental function, the existence of intent may be established by resort to reasonable inferences based on an examination of the surrounding circumstances. *Watson* v. *State*, (1970) 255 Ind. 348, 264 N.E.2d 616; *Tuggle* v. *State*, (1970) 253 Ind. 279, 252 N.E.2d 799; *Wojcik* v. *State*, (1965) 246 Ind. 257, 204 N.E.2d 866.

Intent may be presumed from the voluntary commission of an act. *Black* v. *State*, (1971) 256 Ind. 487, 269 N.E.2d 870; *Croney* v. *State*, (1969) 252 Ind. 319, 247 N.E. 2d 501; *McGill* v. *State*, (1969) 252 Ind. 293, 247 N.E.2d 514; *Coffer* v. *State*, (1958) 239 Ind. 22, 154 N.E.2d 371.

The findings in this case establish that from March 1975, the time the agreement was reached between First Federal and Crowe, until Respondent was threatened with a disciplinary grievance on September 29, 1975, the Respondent took no action to transmit the money entrusted to him and secure the release of the second mortgage. Additionally, the findings demonstrate that during the Spring or Summer of 1975, the Respondent withdrew for personal use at least Six Hundred Dollars ($600.00) from his escrow account, thusly, invading Crowe's funds. This account was never replenished and only when the Respondent was threatened with a disciplinary grievance did he purchase a cashier's check, which for some reason was never received by United. These facts are more

than sufficient to suggest the inference that the Respondent did not intend to carry out a legal matter entrusted to him.

Respondent does not argue that the above facts did not take place, but asserts that his actions during the crucial period of time were the product of his diminished physical and mental well-being. The evidence at the hearing of cause, however, does not suggest this contention. The record merely provides that the Respondent was hospitalized for an heart arrhythmia, at which time he was placed on medication which, according to the Respondent's testimony, acted as a depressant.

Belatedly, in his petition for review the Respondent attempts to introduce for this Court's consideration information from *The Physician's Desk Reference* concerning possible side effects of the prescribed medication. The Respondent had more than ample time, between the commencement of these proceedings on April 26, 1976, and the hearing on February 11, 1977, to consult with his physician and discover the possible side effects of this medication. There has been no explanation provided as to why the alleged adverse effects of the medication were not and could not be discovered prior to the hearing. Accordingly, this Court must limit its consideration to the evidence of record.

Respondent also refers to the fact that during the period in question he was a borderline alcoholic and that such condition somehow excused his failure to carry out the legal matter entrusted to him. We find no record of evidence as to the extent of Respondent's use of alcohol and any particular effects this use could have on his ability to perform his job or his ability to act intentionally.

In light of the above consideration this Court now concludes that the Respondent intentionally failed to carry out his contract of employment with Mr. Crowe and thereby violated Disciplinary Rule 7-101(A)(2).

Respondent next argues that he did not knowingly engage in conduct involving deceit, fraud, or misrepresentation. In-

tent to defraud may be presumed from circumstantial evidence. *England* v. *State*, (1968) 249 Ind. 446, 233 N.E.2d 168; *Fletcher* v. *State*, (1874) 49 Ind. 124, 19 Am. Rep. 673.

The evidence in this case clearly establishes that the Respondent prepared a title insurance policy insuring the house in question against "any defect in or lien or encumbrance on the title." He never disclosed the fact that the second mortgage had not been released. Also, the Respondent drafted a warranty deed conveying the property from Crowe to the Department of Housing and Urban Development and advised the grantors that all matters concerning their involvement with the property were concluded. Respondent again made no mention that the One Thousand Dollars ($1,000.00) had not been transmitted and the second mortgage had not been released. This evidence is sufficient to establish the intent element of prohibitive conduct involving dishonesty, fraud, deceit, or misrepresentation.

Respondent again asserts that the use of prescribed medication and alcohol somehow rendered him incapable of forming the requisite intent. For the reasons previously stated in this opinion, we find that the evidence of record does not support Respondent's contention. Accordingly, this Court now concludes that the Respondent did engage in conduct involving deceit, dishonesty, and misrepresentation when he prepared the title insurance policy and the warranty deed for the Terre Haute property involved in this cause and by such conduct violated Disciplinary Rule 1-102(A)(4).

In his petition for review, Respondent also argues that the evidence does not establish an intent to prejudice or damage his client. Applying the principals this Court has previously noted relative to establishing intent, in this instance intent to prejudice or damage a client's interest can be inferred from the undisputed evidence that the Respondent knew the second mortgage had not been released and prepared a deed and title insurance policy without disclosing this en-

cumbrance. Respondent knew that the property would be transferred again and that the title was clouded. This Court accordingly concludes that the Respondent intentionally prejudiced or damaged his client during the course of representation and by such conduct violated Disciplinary Rule 7-101 (A) (3). Additionally, respondent's acts were prejudicial to the administration of justice and violated Disciplinary Rule 1-102(A) (5).

Having found misconduct it is now the duty of this Court to impose an appropriate sanction. In making this decision this Court considers the nature of the violations, specific acts of the Respondent, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re Tabak*, (1977) 266 Ind. 271, 362 N.E.2d 475; *In re Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128; *In re Wood*, (1976) 265 Ind. 616, 358 N.E.2d 128.

The evidence in this case establishes that the Respondent misused a client's funds, neglected legal matters entrusted to him, intentionally failed to carry out a contract of employment, and misrepresented the status of property, thereby deceiving the parties involved and causing potential damage to clients.

Respondent argues that there is evidence of disability during the period of misconduct and that this disability has now been removed, partially by reason of the Respondent entering public service. The record is just not sufficient to support this argument. Even assuming that there were potential side effects from the medication prescribed to Respondent following his hospitalization, there is not sufficient evidence to support that these side effects were present in this case or even that the level of dosage was such to produce any side effects whatsoever.

Additionally, we find little merit in any argument that an attorney should somehow be excused of misconduct by reason

of the disease of alcoholism. Alcohol related problems create tragedies in all occupations and professions. However, this Court must safeguard the public from unfit attorneys, whatever the cause of unfitness may be. *In re Connor,* (1976) 265 Ind. 610, 358 N.E.2d 120. Likewise, we do not believe that the fact that Respondent is now engaged in public service will preclude future acts of misconduct on his part.

In the present case, Respondent's actions in connection with Crowe's representation and the release of the second mortgage show an intentional, flagrant disregard for ethical standards. The use of a client's funds by Respondent for payment of a personal debt, while funds were necessary for the prompt settlement of the client's business is a grave breach of the client's and public's trust. Such conduct is inexcusable. The availability of client's funds can be a strong temptation to even a well-meaning attorney who "borrows" such funds for what initially is a brief period and then becomes unable to repay them. This Court will not allow such violative conduct to tarnish the integrity of the Indiana Bar nor will it permit the slightest possibility of subjecting the public to such risks.

After considering all matters which have been presented, this Court is forced to conclude that the strongest sanction available to this Court under the Constitution of the State must be imposed to preserve the integrity of the legal profession and to protect the public from future acts of misconduct as found in this case. It is therefore ordered that the Respondent be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.

NOTE.—Reported at 374 N.E.2d 40.