IN THE MATTER OF JACK N. COCHRAN

[No. 677S431. Filed December 8, 1978.]

*D. Joe Gabbert*, of Terre Haute, for respondent.

*Sheldon A. Breskow*, of Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM — This cause is now before the Court on an amended three-count verified complaint filed by the Disciplinary Commission of the Indiana Supreme Court pursuant to Admission and Discipline Rule 23, § 12. A Hearing Officer was appointed, the cause has been heard, and the Hearing Officer has filed his findings of fact, conclusions of law, and recommendations. The Respondent has petitioned this Court for review of the findings of fact and recommendations and the Commission has filed a reply to his petition.

The misconduct charged under Count I of the amended complaint centered on a life insurance policy and the proceeds thereof, which came into the Respondent's possession during the administration of an estate. Specifically, under Count I, the Respondent is charged with engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct which is prejudicial to the administration of justice adversely reflecting on his fitness to practice law, in violation of Disciplinary Rules

1-102(A)(1), (3), (4), and (5), of the *Code of Professional Responsibility*. He is also charged with failing to notify his client of the receipt of funds belonging to the client.

After examining all matters which have been submitted in this cause, we now adopt and accept as our own the findings of fact relative to Count I submitted by the Hearing Officer. These findings establish that on October 2, 1975, John Larry Wilson died as a result of an automobile accident. At the time of his death, John Larry Wilson was the owner of a life insurance policy, Number 336020, issued by Midland Mutual Life Insurance Company. The policy named the deceased's former wife, Peggy Sue Wilson, who became Peggy Sue Flath, as beneficiary. The Respondent had been employed by John Larry Wilson in the dissolution of his marriage with Peggy Sue Wilson, and was also employed as Attorney for the Personal Representative of the estate of John Larry Wilson.

Peggy Sue Wilson, then Flath, was not aware that she was the beneficiary under this policy. Although the Respondent contacted Mrs. Flath on two occasions concerning other matters and had physical possession of the policy, he never advised Mrs. Flath of her inclusion in the policy.

The Respondent signed the name of Peggy Sue Wilson Flath to a Beneficiary's Statement to collect the proceeds of the insurance policy and he received the proceeds of the insurance policy on November 17, 1975, by a check from the insurance company for 9,857.22 dollars in the name of Peggy Sue Flath. The Respondent endorsed the check and placed it in his account in Merchant's National Bank of Terre Haute, Indiana. The Respondent did not represent Peggy Sue (Wilson) Flath and had no permission to sign her name to the Beneficiary's Statement or to endorse her name to the check from Midland Mutual Life Insurance Company. He did not pay the money to Peggy Sue Flath until August 16, 1976, after the existence of the money was discovered by information uncovered in depositions in another matter.

During the period between the time the Respondent received the funds from Midland Mutual Life Insurance Company and the time it was paid to Peggy Sue Flath, the funds were not maintained in a separate

trust account, and there was a period of time during which the funds in the account were depleted. The money used to pay Peggy Sue Flath came from money borrowed by the Respondent on his life insurance.

In his Petition for Review, the Respondent asserts that the co-administrator of the Wilson estate had knowledge of the withholding of funds and this fact, somehow, would constitute exculpation or mitigation of the alleged misconduct. This asserted fact does relate to that portion of Count I which charges the Respondent with failing to notify a client of the receipt of funds; however, such matter has no bearing on whether the acts of Respondent constituted deceit, misrepresentation, or illegal conduct. In this latter area of misconduct a client's knowledge is not a waiver of ethical responsibility.

The Respondent acknowledges that he signed the name of Peggy Sue Wilson Flath and received the proceeds from the Wilson insurance policy, but further argues that this conduct was the product of excess zeal on his part in an attempt to minimize potential litigation. Likewise, the Respondent asserts in mitigation that his account was depleted to protect such funds from potential personal creditors of the Respondent.

These explanations, even if accepted as factual findings are not justification for the alleged misconduct. The Respondent has to be aware of the proper methods for determining the rights to insurance proceeds and of the importance of segregating these proceeds in a proper trust account beyond the reach of personal creditors. The unalterable facts remain that Respondent, without any authority whatsoever, signed Mrs. Flath's name twice, withdrew the proceeds, deposited the money in his account and then depleted such account.

In light of the above findings this Court concludes that Respondent's entire conduct concerning the insurance policy and disposition of its proceeds did indeed involve dishonesty, fraud, deceit and misrepresentation. Furthermore, his actions constitute illegal conduct involving moral turpitude and conduct which is prejudicial to the administration of justice. Accordingly, we now further find that by virtue of such conduct the Respondent violated Disciplinary Rules 1-102(A)(1), (3), (4), and (5), of the *Code of Professional Responsibility.*

Under Count I of the Amended Complaint, the Respondent is also charged with failing to notify his client of the receipt of funds belonging to the client. Such conduct would violate Disciplinary Rule 9-102(B). This alleged misconduct, however, is cited, for some reason, as a violation of Disciplinary Rule 7-102(A)(1) in the Amended Complaint. Examination of the record indicates that the Respondent was aware of the specific charges and the improper reference was not a point of confusion or a matter which was prejudicial to the substantive and procedural rights of the Respondent. The parties understood the issue to be whether the Respondent failed to notify his client of the receipt of funds.

With the issue so framed, this Court has examined the record and concluded that there is not sufficient evidence to support a finding of misconduct for the failure to notify a client of the receipt of funds. The record is clear that Peggy Sue Wilson Flath was not the Respondent's client; thus, his failure to notify her of the receipt of this money was not misconduct as charged under this portion of Count I.

Under Count II of the Amended Complaint the Respondent is charged with engaging in conduct involving fraud, deceit and/or misrepresentation, conduct prejudicial to the administration of justice, and conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1-102(A)(1), (4), (5), and (6), of the *Code of Professional Responsibility*. He is also charged with violating Disciplinary Rule 7-102 by knowingly failing to disclose information he was legally required to reveal and by knowingly making a false statement of law.

We have examined all of the matters presented in this cause and now adopt and accept as our own the findings of fact submitted by the Hearing Officer. Relative to Count II, we accordingly find that on December 1, 1975, Cloyd Wolfe and his granddaughter, Judy Hiatt, went to the Respondent's office concerning the title to real estate in Sullivan County, Indiana. Cloyd Wolfe was the widower of Ethel Mae Wolfe, who died the owner of the real estate, leaving surviving her, besides her husband, her daughter, Betty Ann Hiatt, who is Judy Hiatt's mother, and a grandson, Richard E. Wolfe, Jr., a minor. The Respondent prepared a deed for the signature of Betty Ann Hiatt, her husband, Donald G. Hiatt, and

Richard E. Wolfe, Jr., deeding their interest to Cloyd Wolfe. Judy Hiatt signed the names of all the grantors to the deed. The deed was notarized by the Respondent. Judy Hiatt called her mother, who gave her permission to sign Mrs. Hiatt's name and that of her husband. The Respondent stated that he would call the mother of Richard E. Wolfe, Jr., and explain the situation to her. The deed was recorded, and title of Richard E. Wolfe, Jr.'s share was not again placed in his name until January, 1978.

The Respondent allowed Judy Hiatt to sign the name of Richard E. Wolfe, Jr., to the Waiver of Notice of Appraisal of Property under the Inheritance Tax Laws in the Estate of Ethel Mae Wolfe. This effectively prevented the mother of Richard E. Wolfe, Jr., from determining the interest of her son in the real estate in the estate.

The Respondent allowed the Waiver of Notice of Appraisal of Property under the Indiana Inheritance Tax Laws in the Estate of Ethel May Wolfe to be filed with the Court, knowing that the name of Richard E. Wolfe, Jr., had been signed without authority by Judy Hiatt.

In his Petition for Review the Respondent asserts that there should be further findings of fact to the effect that he was unaware Richard was a minor, that practice and custom allowed notarization of signatures signed out of the presence of the Notary, and that his conduct did not inure to his financial or personal benefit.

The fact that there was no personal or financial benefit or that others engaged in the same practice is irrelevant to the issue of misconduct. Notarizing the false, unauthorized signature of a party who is not present totally defeats the purpose of a notary. The Respondent, as attorney, prepared the deed and waiver of appraisal in this estate and he allowed an unauthorized signature to be placed on these documents. To suggest that this conduct was acceptable customary practice manifests an incredible naivete or misconception of the laws of this State. Additionally, the record does not support the Respondent's contention that he was unaware of Richard's age. However, this fact also is not relevant to the issue at hand.

In light of the above findings of fact and factual considerations we now conclude that the Respondent knowingly failed to disclose to Judy

Hiatt the legal consequences of placing the unauthorized signature of Richard Wolfe, Jr., on the warranty deed and waiver of appraisal; knowingly failed to disclose to Richard Wolfe, Jr., or his mother the transactions which took place, pursuant to the Respondent's legal advice, involving the unauthorized transfer of interests in real estate; engaged in conduct prejudicial to the administration of justice; and engaged in conduct which adversely reflects on his fitness to practice law. Accordingly, we now find that the Respondent violated the code of Professional Responsibility as charged under Count II of the Amended Complaint filed in this cause.

The allegations of misconduct raised under Count III of the Amended Complaint grow out of the Respondent's handling of the Sarah E. Bedwell Estate. Specifically, the Respondent is charged with violating Disciplinary Rules 9-102(B)(1), (2), (3), and (4), by failing to notify the Court and the heirs of his receipt of estate assets, failing to preserve such assets, and failing to turn over these assets to the entitled recipients. He is further charged with neglecting a legal matter entrusted to him, and with engaging in illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit and/or misrepresentation, conduct which is prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law. By virtue of this alleged misconduct, the Respondent is charged with violating Disciplinary Rules 6-101(A)(3) and 1-102(A)(3), (4), (5), and (6) of the *Code of Professional Responsibility*.

This Court has examined all matters which have been submitted in this cause and now adopts and accepts as its own the findings of fact submitted by the Hearing Officer which, in pertinent part, provide that the Respondent was the Administrator and Attorney for the Estate of Sarah E. Bedwell. He filed a final report on January 19, 1971 and was discharged by the Sullivan Circuit Court on February 19, 1971. The report listed as a part of the estate a distribution from the Estate of Pete Hardesty in the amount of $433.32. The report failed to mention the receipt on March 3, 1970, by the Respondent, as Administrator of the Estate of Sarah E. Bedwell, of three checks from First Federal Savings and Loan Association of Vincennes from a joint account between

Pete Hardesty and Sarah E. Bedwell. One of the checks in the amount of $4,524.82 was deposited by the Respondent in his account in the Farmers State Bank of Sullivan. These funds were not segregated nor identified within such account in any manner. After a period of time, this money was withdrawn from the Respondent's account.

Additionally, a certificate for eleven shares of Preferred Stock of the Greene County Farm Bureau Ass'n., Inc., was received in the Sarah Bedwell Estate but no mention was made of this stock in the final report. During the years from 1975 to 1977, the Respondent received five checks from the Greene County Farm Bureau Cooperative Ass'n., Inc., and deposited them in his account at the Farmers State Bank of Sullivan. The first check dated July 21, 1975, was in the amount of $88.23. The second on March 23, 1976, was in the amount of $13.75. The third on April 20, 1977, was in the amount of $13.75. The fourth check on May 23, 1977, was in the amount of $50.00 and was to redeem two shares of stock. The fifth was dated June 28, 1977, in the amount of $7.32.

With regard to this estate, it further appears that the Respondent was attorney for the Department of Welfare which had a lien against the estate for old age assistance.

In February 1977, one of Mrs. Bedwell's daughters, Mary Page, learned about the Farm Bureau stock; she called the Respondent's office, but did not speak with him. On May 2, 1977, Respondent filed a petition to reopen the estate of Sarah Bedwell and accounted for the funds in Respondent's hands. The Respondent repaid all funds, plus interest in the amount of $2,241.55, and satisfied the Welfare Department lien.

In his petition for review, the Respondent seeks additional findings to the effect that at the time the estate was initially closed, the stock in question was worthless. When the Farm Bureau Association decided to redeem this stock, the Respondent asserts he learned of his error concerning the $4,500 dollar check. The money plus interest were repaid.

The issues raised by the Respondent in this portion of the Petition for Review were considered by the Hearing Officer. We agree with the Hearing Officer's conclusions:

"The Respondent testified that the check, which was Commission Exhibit No. 10, was inadvertently deposited in his attorney account, either by the bank, or by his secretary. However, at no time did the Respondent testify that he had a separate attorney's Trust Account in which the funds could be deposited, nor did he open an Estate account, although he testified that an Estate Account was opened for the $433.32 some ten months later. The Respondent claimed it was an honest mistake that was only discovered when the money from the Farm Bureau stock began to appear. In all fairness to the Respondent, he has repaid the money, plus interest, in the amount of $2,241.55. However, it is hard to believe that his reflective memory would uncover the Hardesty check in 1977, about the time of the disciplinary investigation, when he couldn't remember it a few months after he received it. It is hard to conceive that one could settle a few hundred dollar estate as insolvent and not remember that there was also $4,500.00 in assets not accounted for."

In light of the above findings of fact, this Court now further finds that the Respondent has violated the Code of Professional Responsibility as charged under Count III of the Amended Complaint, to-wit: Disciplinary Rules 9-102(B)(1), (2), (3), and (4); 6-101(A)(3); and 1-102(A)(3), (4), (5), and (6) of the Code of Professional Responsibility.

Having concluded that the Respondent has engaged in misconduct and violated the disciplinary rules applicable to the legal profession, it now becomes this Court's duty to impose an appropriate sanction. This is an awesome responsibility in that this Court must weigh societal interests and those of the individual practitioner. As we have stated repeatedly, our determination of the appropriate sanction includes consideration of the nature of the ethical violation, the specific acts of the Respondent, the Court's responsibility to preserve the integrity of the legal profession, and the risk, if any, to which the public will be subjected if the Respondent is allowed to continue in the profession. *In re Vincent*, (1978) 268 Ind. 101, 374 N.E.2d 40; *In re Tabak*, (1977) 266 Ind. 271, 362 N.E.2d 475; *In re Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128.

In his petition for review the Respondent submits several factors to be considered in mitigation of his conduct relating to all three charges.

These matters include testimony of Respondent's good character and professional accomplishments. Respondent's cooperation with the Commission and the fact that all funds, together with interest, have been returned to the proper recipients. The record before this Court reveals evidence in support of these assertions and we have considered these matters in our determination of an appropriate disciplinary sanction.

It is our conclusion, however, that the matters submitted in mitigation do not excuse the Respondent's misconduct nor lessen its impropriety. Respondent's acts not only surpassed the bounds set by our Code of Professional Responsibility but also exhibit elements of illegality. An attorney's responsibility and professional conduct often place him in an inherently sensitive position of trust which may involve large sums of money belonging to others or involve crucial advice with important legal consequences. This trust is necessary to adequately provide the services expected of an attorney and must be zealously protected to preserve the integrity of the entire legal system. If an attorney breaches this trust, he not only fails his client but also this attorney discredits and demeans the entire legal profession. Although there are elements of mitigation present in this cause, these matters simply are insufficient to significantly diminish the serious nature of the misconduct found in this case.

Accordingly, this Court now concludes that by reason of the serious nature of the misconduct found in this cause in order to preserve the integrity of the legal profession, the strongest sanction available under the Constitution of the State of Indiana must be imposed. It is therefore ordered that the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.

NOTE—Reported at 383 N.E.2d 54.