In the Matter of Frank A. CASTELLO.

No. 977S688.

Supreme Court of Indiana.

April 10, 1980.

Fred A. Malo, Hammond, for respondent.

David B. Hughes, Trial Counsel, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

This cause is before this Court on a two-court verified complaint filed by the Indiana Supreme Court Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. Under the appropriate provisions of Rule 23, a hearing has been conducted and the Hearing Officer's report has been filed under this cause. The Disciplinary Commission, accepting the Hearing Officer's findings of fact, has petitioned this Court to review several conclusions drawn by the Hearing Officer. Respondent, also accepting the findings of fact, has requested the Court to consider a suggested form of discipline under the findings and conclusions tendered by the Hearing Officer.

The Respondent is charged with similar misconduct under both counts of the verified complaint filed in this cause. Specifically, he is charged with violating disciplinary rules; conduct involving dishonesty, fraud, and deceit; conduct prejudicial to the administration of justice; and conduct adversely reflecting on his fitness to practice law, all in violation of Disciplinary Rules 1–102(A)(1), (3), (4), (5) and (6) of the *Code of Professional Responsibility for Attorneys at Law.* The alleged misconduct under both counts stems from the Respondent's handling of estate matters. Consequently, the Respondent is additionally charged with failing to preserve estate assets and failing to make these assets available to the legatees in violation of Disciplinary Rules 9–102(A) and 9–102(B)(2), (3) and (4) of the *Code of Professional Responsibility for Attorneys at Law.*

After reviewing all matters which have been submitted in this cause, this Court now adopts and accepts as its own the findings of the Hearing Officer which establish that the Respondent was admitted to practice in 1961 and maintained a legal practice in Michigan City, Indiana, from the time of admission until September, 1976. Since the latter date, the Respondent has not actively engaged in the private practice of law.

Relative to the allegation of misconduct set out under Count I of the verified complaint, we find that in December, 1972, the Respondent was appointed as the Personal Representative of the Estate of Herman A. Wilke, a Florida resident with assets in Indiana at the time of his death. This was the Respondent's first estate. As Personal Representative, on December 21, 1972, the Respondent obtained possession of the only asset in Indiana, a 15,000 dollar savings account, and deposited this money in the Respondent's checking account # 2–64786 at the First National Bank and Trust Company of LaPorte, Indiana. This account contained both funds of the Respondent and funds of clients. During 1973, the Respondent expended all funds in this account, including the funds deposited from the Wilke estate. By January 26, 1973, this account had been reduced to a balance of $1,579.60 and by April 12, 1973, was overdrawn in the sum of $364.63. From April, 1973, until March, 1974, when the Respondent attempted final distribution, this account was overdrawn by the Respondent on seven occasions. There were numerous occasions during the administration of the estate when the total of Respondent's personal cash assets were less than his obligation to the Wilke estate.

On March 18, 1974, the final account in the Wilke estate was approved showing a balance for distribution of 12,480.61 dollars to be distributed in equal shares to the decedent's childless second wife and two children. On March 28, 1974, a check to one of the children was dishonored by reason of insufficient funds in the Respondent's account in the First National Bank and Trust Company. On April 23, 1974, this legatee received a cashier's check for the amount of the distributive share drawn on Account # 00120–1 at the Lake Shore Bank and Trust Company, Michigan City, Indiana.

Relative to the allegations of misconduct set out under Count II of the verified complaint, we find that on May 10, 1974, the Respondent was appointed Co-Executor and became the attorney for the Estate of Hilda Marie Kroening, an Indiana resident who died testate on March 30, 1974. The principal probate asset in this estate was a savings account in the amount of $16,638.65 in the decedent's name at the Michigan City Savings and Loan Association, of Michigan City, Indiana, Account # 12244. On or about May 14, 1974, the Respondent, as Executor, drew down this account at the Michigan City Savings and Loan Association in the sum of $16,638.65 and deposited the funds in the Respondent's personal checking account # 00120–1 at the Lake Shore Bank and Trust Company of Michigan City, Indiana. The latter checking account was opened on April 23, 1974, the day funds were withdrawn to pay the distributive share of the Wilke estate dealt with in Count I. The Respondent's checking account at the Lake Shore Bank and Trust Company of Michigan City was what he called his "commercial" law office checking account. In this account the Respondent maintained his own personal funds and from which he routinely paid his personal and law office expenses. This checking account was not an escrow account or trust account, and the Respondent did not maintain an escrow account during the period of time in question. During the year 1974, the Respondent expended all of the funds in his checking account with the Lake Shore Bank and Trust Company, including the funds from the Kroening estate. By July 15, 1975, this checking account was overdrawn. During the administration of this estate, there were numerous instances when the total cash deposits did not equal his obligation to the Kroening estate.

The sole heir of the Kroening estate was the decedent's son, Ronald L. Kroening. On May 16, 1975, the Respondent filed his

Final Account in the Kroening estate representing under oath that the balance of the estate on hand for distribution was $14,786.37. The Court directed him to pay over the balance of the estate to Ronald L. Kroening. The Respondent delivered his personal check to Ronald L. Kroening for $14,786.37 drawn on the Respondent's checking account at the Lake Shore Bank and Trust Company of Michigan City; and, without prior notice to Kroening, Respondent stopped payment on this check after Kroening had purchased a certificate of deposit with these funds. The Respondent asserted that he stopped payment of check when he discovered that an amended Indiana Inheritance Tax Schedule was required to be filed in the Kroening estate. The amended return was, in fact, filed by the Respondent. Nevertheless, the Respondent's check to Kroening would have been dishonored for insufficient funds had payment not been stopped in that this checking account was overdrawn. Finally, in November, 1975, after an additional six-month delay, the Kroening estate was closed upon payment by the Respondent to Kroening of a sum in excess of 15,000 dollars which amount was to include the interest lost by Kroening as a result of the stop payment order issued by the Respondent.

In light of the above considerations, this Court now concludes that, under the charges of Counts I and II of the complaint, the foregoing facts establish that Respondent failed to keep his clients' funds in separate identifiable bank accounts in violation of Disciplinary Rule 9–102(A). The findings also establish that he failed to identify, label and protect property belonging to clients in violation of Disciplinary Rule 9–102(B)(2); he failed to maintain records or to render an appropriate accounting of such funds in violation of Disciplinary Rule 9–102(B)(3); and he failed to promptly pay and deliver such funds to his clients in violation of Disciplinary Rule 9–102(B)(4). By so doing, Respondent engaged in conduct involving dishonesty and deceit, conduct which is prejudicial to the administration of justice and that which adversely reflects on Respondent's fitness to practice law, all in violation of Disciplinary Rules 1–102(A)(1), (4), (5) and (6).

In his report, the Hearing Officer concludes that the misconduct of the Respondent was the product of unfamiliarity with the disciplinary rules and estate accounting procedures. The Hearing Officer characterized this conduct as pure stupidity rather than any fraudulent intent or purpose. It is these conclusions to which the Disciplinary Commission objects.

■ The Hearing Officer's conclusions relating to the characterization of the misconduct present in this case are matters to be considered in assessing discipline. State of mind, lack of skills or lack of understanding of the disciplinary rules cannot be considered as a defense of misconduct. In the main, the disciplinary process has been designed to protect an unsuspecting public, not to punish the practitioner. If an attorney is motivated by evil design, the criminal process will measure his wrongfulness and dictate an appropriate sanction.

In the present case, this Court has reviewed all matters which have been submitted relating to the imposition of discipline. This Court finds little merit in the suggestion that misconduct should be excused by reason of unfamiliarity with estate accounting practices. The evidence in this case demonstrates that Respondent possessed sufficient understanding of probate procedure to provide legal representation to his client. It was the handling of his clients' funds, not his legal skills, which was deficient. The management of clients' funds or property is not limited to estate practice; it is indigenous to every type of professional representation. The Respondent's commingling and misuse of a client's funds is symptomatic of a serious flaw in his character.

This Court, also, cannot excuse misconduct by reason of unfamiliarity with the disciplinary rules. It would be ludicrous for this Court to find misconduct under the Disciplinary Rules and then excuse an attorney because he asserted unfamiliarity with the rules. If anything, the fact that

Respondent was unaware of the rules demonstrates his unfitness.

 Our assessment of the matters now before this Court is that the Respondent, as an attorney representing an estate and in the performance of his duties as the legal representative of an estate withdrew estate assets, commingled these funds with personal assets, used the funds for personal obligations, delayed the distribution of the estate and attempted distribution with subsequently dishonored commercial instruments. The parties directly affected by these acts have good reason to complain. Funds, which rightfully were theirs, were jeopardized by the acts of the Respondent. The estates the Respondent was obligated to preserve and protect were employed as personal liquidity. Respondent's course of conduct diminished the integrity of the legal profession. In view of these considerations, we find that unfamiliarity with rules and procedure will not excuse the misconduct involved.

 In his statement to this Court relating to an appropriate form of discipline under the circumstances of this case, Respondent points out that at the present time he is not actively engaged in the private practice of law and requests this Court, if a suspension is given, to limit the suspension in such a manner as to allow the Respondent to continue serving as an administrative Hearing Officer. The fact that a person is engaged in public service will not preclude future acts of misconduct. *In re Vincent* (1978), Ind., 374 N.E.2d 40. The misconduct in this case demonstrates a serious question of integrity which is a prerequisite to all professional conduct. This Court cannot find a person in violation of the *Code of Professional Responsibility* and thereafter mitigate the severity of the conduct by finding an attorney now serves as a public employee. Ethical standards of behavior apply to every attorney, regardless of the form of employment.

In view of the above considerations, this Court finds that in order to preserve the integrity of the legal profession and in order to safeguard the public from future acts of misconduct, this Court must impose the strongest sanction available. It is therefore ordered that by reason of the misconduct found under the verified complaint filed in this cause, the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.

DeBRULER, J., dissents as to the imposition of a disbarment and would impose a two-year suspension.