**Timothy D. ROACH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 4–582A127.

Court of Appeals of Indiana, Fourth District.

July 28, 1983.

Rehearing Denied Sept. 1, 1983.

Richard J. Thonert, Romero & Thonert, Auburn, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

After a jury trial, Timothy D. Roach was convicted of Burglary, a class C felony, under Ind.Code 35–43–2–1. We affirm.

The facts are as follows. At 2:25 on the morning of April 11, 1980, Officer Jeffrey Hunter noticed a car parked by the side of a road approximately 100 yards from a doctor's clinic. As he radioed his dispatcher to check the car's license, he saw someone moving by the clinic. He turned on his spotlight and observed a person dressed in dark clothes. The person turned and ran. Hunter followed and was able to see the suspect for several seconds at a distance of thirty-five yards as he ran between two houses. He lost the suspect. Moments later, Hunter heard the car he had observed start up and drive away. The car was found to be registered to Timothy Roach, the defendant.

Returning to the clinic, Hunter saw that one window, securely closed earlier, had been broken out. He found a paper bag outside the window, containing a shattered plate of glass held together by grey duct tape. Inside the clinic, Hunter saw muddy footprints from the broken window to the back door, which was unlocked. Hunter left the bag of glass in a chair inside the clinic and left. The bag was taken to the police station by another officer later that day.

Several days later, Detective Thomas Stump showed Officer Hunter photographs of Roach and another man, indicating that they were suspected of breaking into the clinic. Hunter selected Roach's picture as depicting the man he had seen at the clinic. Stump arrested Roach on April 23, 1980. At that time, Stump seized the shoes Roach was wearing. Roach's shoes were found to match footprints in the mud outside the clinic. Also, a sliver of glass embedded in one of the shoes was found to match a sample from the bag of glass discovered by Hunter. After the arrest, Hunter went to the DeKalb County Jail, where Roach was incarcerated, and again identified him as the man outside the clinic.

At trial, Hunter was not allowed to testify to his earlier identifications of Roach from his picture or in jail, but he was allowed to identify Roach as the man he had seen fleeing the clinic. Roach introduced testimony that he was at home drinking with a friend on the night of the break-in. Roach also introduced evidence from which the jury might have believed the break-in was committed by his roommate, who resembled Roach and gave Roach the shoes that were later linked to the break-in.

On appeal, Roach raises six issues:

1. whether the trial court erred in denying Roach's motion to strike a witness's tainted in-court identification and in denying a motion for a mistrial on the same basis;

2. whether Roach was denied a fair trial by the prosecutor's improper closing argument;

3. whether the court erred in refusing Roach's tendered instruction on circumstantial evidence;

4. whether the court erroneously admitted a bag of glass without proof of a sufficient chain of custody;

5. whether the court erroneously admitted a pair of shoes, seized from Roach without a warrant; and

6. whether there was sufficient evidence to support the jury's verdict.

■ Roach first claims the court erred in refusing to strike Officer Hunter's testimony identifying him and in denying a motion for a mistrial. Roach argues that, because Hunter's identification of him was tainted by suggestive pre-trial procedures, the admission of Hunter's testimony denied him a fair trial. This error, however, is not preserved for review. The record shows Roach never moved for a mistrial on this basis. The court did not err in "denying" a motion that was never made. Further although Roach moved to strike Hunter's testimony during the State's case-in-chief, the law requires an objection when the disputed testimony is offered as evidence. *Harris v. State,* (1981) Ind., 427 N.E.2d 658, 661. Roach made no such timely objection. Any error is accordingly waived. Nor is the

issue reviewable as fundamental error. Our supreme court has held, on similar facts, that the admission of an allegedly tainted identification is not fundamental error when any harm is mitigated by cross-examination on the witnesses' basis for their identification of the defendant. *Warriner v. State,* (1982) Ind., 435 N.E.2d 562. The court did not err in allowing Hunter to identify Roach as the person he saw fleeing the scene of the break-in.

■ Next, Roach argues prosecutorial misconduct in closing argument put him in such grave peril that he was denied a fair trial. Specifically, Roach claims the prosecutor's statement in closing argument that he personally believed Officer Hunter's testimony denied Roach a fair trial. This issue, however, was not raised in Roach's motion to correct errors. Any error is waived. *Morris v. State,* (1979) 270 Ind. 245, 384 N.E.2d 1022. Roach also challenges the prosecutor's argument that the statistical probability of Roach's innocence was remote given the circumstantial evidence linking him to the crime. The prosecutor, using a blackboard, argued as follows:

The testimony clearly was by Bruce Boaz, the lab technician, that mathematically the chances are one in one thousand that the glass from the bottom of [Roach's] shoes came from other than a common source. A thousand to one that, this glass goes with the exhibit from the scene. Next we've got testimony about footprints, footprints again found at the scene out in the muddy field. The testimony was that, by Officer Stump, that these shoes found on the feet of Tim Roach matched the size, the wear and the general tread of the prints that he found in that field. What's the possibility first that the individual who was at this scene, if it wasn't Tim Roach, had the same size shoes? I don't know what the chances are. One in a hundred, one in fifty, one in twenty-five? How about one in ten? Next what is the possibility that an individual out there had the same wear pattern on the bottom of his shoes that Mr.

Roach did? The shoes were worn and showed to be worn out in the same way that the shoes that Mr. Roach had. Again, one in a hundred, one in fifty, one in twenty-five? Let's be fair. How about one in ten? I don't know. Put any value that you think. What's the chances that some random individual out there at the scene had the same shoes with the same tread pattern? Again, I don't know. One in a hundred? Let's go with one in ten.

. . . .

These are assumptions. I'll grant you that. But you put the amount in there that you think. Okay. What's the chance, then, that these footprints were the same size and the same wear pattern and the same tread pattern and belonged to somebody else? Multiply those out. One, two, three zeroes. One in a thousand? Maybe that's a little heavy. Let's try one in a hundred, to be reasonable about it. Next what's the possibility that this individual with glass in his shoe had the same footprints and ultimately ended up in the Defendant's car? The Defendant's car found at this particular scene. Again, I don't know. What is the possibility? One in a thousand? One in a hundred? I don't know. Be fair. How about one in a hundred? One in ten? I don't know. Put any value that you feel. Taking these and using the fair figures, one in a thousand here on the glass, what's the possibility that all these things happened, all these circumstances happened all at the same time? One in a thousand here. One in a hundred here. One In a hundred here. I don't know. Maybe it's a little bit more. Maybe it's a little bit less. But using these amounts, there's three, four, five, six, seven zeroes. One in ten million, chances of all these things happening.

▮▮▮ Roach contends here that, by assigning assumed probabilities to the evidence, the prosecutor improperly stated facts not in evidence. We disagree. Although prosecutors may not argue facts not in evidence, they may properly argue their own analysis of the evidence. *Bennett v.*

*State,* (1981) Ind., 423 N.E.2d 588; *Rufer v. State,* (1976) 264 Ind. 258, 342 N.E.2d 856. In assigning probabilities to the various pieces of evidence, the prosecutor did not state as a fact that any specific probability was correct. The only exception was the probability that glass in Roach's shoe would match glass found at the scene—estimated by the state's expert as one in a thousand. Thus, the prosecutor merely supplied a method of analyzing the evidence in the record, leaving the jurors free to assign any statistical probability to the various facts. The prosecutor did not improperly state facts not in evidence here; thus, we find no prosecutorial misconduct.

We are aware that several courts have disallowed mathematical analysis of identification evidence where, as here, there was no evidence supporting the probabilities on which the analysis was based. *People v. Collins,* (1968) 68 Cal.2d 319, 66 Cal.Rptr. 497, 438 P.2d 33; *State v. Sneed,* (1966) 76 N.M. 349, 414 P.2d 858. Those cases are, however, distinguishable from the present one. In those cases, the experts were allowed to calculate the odds that the defendant fit the circumstantial evidence only by chance, based on assumed probabilities for various pieces of evidence. This procedure required the jurors to accept both the experts' conclusions and their assumptions as proven, even though the basic assumptions were not based on any evidence. Here, the jurors were not so required to accept unproven assumptions as facts. Thus, the limit on expert testimony imposed in *Collins, supra,* and *Sneed, supra,* is inapplicable to this case.

In holding that the statistical argument in this case was not improper, we do not condone or encourage the use of such arguments. We note that several courts have flatly forbidden the use of such statistical analysis because it might confuse or unduly sway jurors who are ill-equipped to evaluate statistical arguments critically. *United States v. Massey,* (8th Cir.1979) 594 F.2d 676; *State v. Carlson,* (1978) Minn., 267 N.W.2d 170; *see also People .v. Collins, supra.* Mathematical evaluation of circum-

stantial evidence adds little to the jurors' understanding of the case and can, if improperly applied, unfairly distort their view of the evidence. *See* Tribe, *Trial by Mathematics: Precision and Ritual in the Legal Process,* 84 Harv.L.Rev. 1329 (1971). Nevertheless, the conduct of closing argument is within the trial court's discretion. *Whitacre v. State,* (1980) Ind., 412 N.E.2d 1202. Roach has not shown that the prosecutor misapplied the rules of probability, as in *Collins, supra,* or improperly equated mathematical probability with proof beyond a reasonable doubt, as in *Massey, supra.* Absent some showing that the prosecutor's argument was misleading or unfair, we cannot say that the trial court abused its discretion in allowing this argument.

■ Roach further claims the court erred in denying his tendered instruction on circumstantial evidence, which said:

> Where a conviction for a criminal offense is sought upon circumstantial evidence, the State must show, beyond a reasonable doubt, that the alleged facts and circumstances are true, and that such facts and circumstances are absolutely incompatible, upon any reasonable hypothesis other than that of the guilt of the accused. And in this case, if all the facts and circumstances relied upon by the State to secure a conviction can be reasonably accounted for upon any theory which is consistent with the innocence of the defendant, then you should find for him. And the facts and circumstances relied upon by the State, and proved under the rules of law, as hereinbefore indicated, should be such as to leave no reasonable doubt in the minds of the Jury as to the defendant's guilt.

In determining whether an instruction has been properly refused, we must determine (1) whether the tendered instruction correctly states the law, (2) whether it is supported by the evidence, and (3) whether its substance is covered by other instructions given by the court. *Spears v. State,* (1980) Ind., 401 N.E.2d 331; *Nelson v. State,* (1980) Ind.App., 413 N.E.2d 988. An instruction like the one tendered by Roach is not required where the evidence of guilt is both direct and circumstantial. *Haynes v. State,* (1982) Ind., 431 N.E.2d 83. Where, however, the evidence of guilt is entirely circumstantial, the defendant is entitled to an instruction that the evidence must exclude very reasonable hypothesis of innocence. *Spears v. State, supra.*

Although Roach's tendered instruction is not as clear as it might be, it is a substantially correct statement of the rule in *Spears, supra.* Further, Roach's instruction was supported by the evidence since the evidence of Roach's guilt was entirely circumstantial. Officer Hunter's testimony that he saw Roach fleeing the scene and the testimony linking Roach's shoes and car to the scene merely proved facts from which guilt could be inferred. The state contends, however, that the court's other instructions adequately covered the substance of Roach's tendered instruction.

■ Specifically, the state relies on the court's final instruction number eight:

> It is the duty of the Jury to reconcile the evidence, if possible, upon the theory of the Defendant's innocence. Therefore, if after considering all the evidence in the case, both direct and circumstantial, it can be reconciled or explained upon any theory consistent with the Defendant's innocence, then you must find the Defendant not guilty. If, however, you find that the evidence cannot be reconciled upon any possible theory consistent with the Defendant's innocence and that the evidence shows his guilt beyond a reasonable doubt, then you should return a verdict of guilty.

This instruction differs significantly from the tendered instruction only in that it addresses both direct and circumstantial evidence. As noted above, however, the evidence of Roach's guilt was entirely circumstantial. Thus, the court's instruction, like the tendered instruction, could only have been applied by the jury to circumstantial evidence of Roach's guilt. On these facts, the court's instruction adequately covered the substance of Roach's tendered instruc-

tion. The court did not err in refusing to give the tendered instruction.

■ Roach next contends the court erroneously admitted into evidence a brown paper bag containing a shattered plate of glass held together by a piece of duct tape. Roach also challenges the admission of expert testimony linking glass in the bag to a fragment found embedded in Roach's shoe. Officer Hunter testified that he found this bag outside the clinic and that he believed the glass came from the broken-out window through which the clinic was entered. Specifically, Roach argues the state failed to establish a proper chain of custody linking the bag and its contents to the scene of the break-in. Such a chain of custody must be established before fungible evidence may be admitted. This foundation ensures that the evidence offered has not been altered or substituted for the evidence originally secured. *Wilson v. State,* (1975) 263 Ind. 469, 333 N.E.2d 755. Nevertheless, hard physical evidence whose characteristics are capable of eyewitness identification may be admitted if a witness is able to identify it and testify that it is in a substantially unchanged condition. *Warriner v. State,* (1982) Ind., 435 N.E.2d 562; *Woodard v. State,* (1977) 267 Ind. 19, 366 N.E.2d 1160.

■ It may be true, as the appellant argues, that paper bags and shattered glass are generally fungible and not readily identifiable. In this case, however, the court could have found that the bag of glass was identifiable by the way the glass was held together by duct tape. Here, Officer Hunter was initially uncertain whether the paper bag being offered was the one he found outside the clinic, but after opening the bag and examining the glass and tape inside he was able to identify it as the one he had found. Hunter also testified that the bag and its contents appeared to be in the same condition as when he found it. This was an adequate foundation for admitting the bag and its contents. *Warriner, supra.* The court did not err in admitting the bag or in allowing the state's expert witness to testify about his analysis of the glass inside.

■ Roach further contends the court erred in admitting the pair of shoes Detective Stump seized from him when he was arrested. The state sought to show that these shoes matched footprints in the mud outside the clinic. Roach argues that, because no exigent circumstances existed, the warrantless seizure of his shoes violated the fourth amendment and the shoes were thus inadmissible. We disagree. It is well settled that no warrant is required for a search incident to a lawful arrest for the purpose of disarming the suspect or preventing the destruction of evidence. *Chambers v. State,* (1981) Ind., 422 N.E.2d 1198; *Romack v. State,* (1983) Ind.App., 446 N.E.2d 1346. Roach's arrest, pursuant to a warrant, was clearly valid; the detective seized Roach's shoes to preserve them as evidence. The search was valid, and the court properly admitted the shoes into evidence.

■ Finally Roach contends there was insufficient evidence to support his conviction for burglary. In reviewing the sufficiency of the evidence we neither weigh the evidence nor judge credibility. We consider only the evidence most favorable to the State with all reasonable inferences therefrom, and we will affirm if there is substantial evidence on each element from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Harris v. State,* (1981) Ind., 425 N.E.2d 112; *Biggerstaff v. State,* (1982) Ind.App., 435 N.E.2d 621. A guilty verdict may be based on circumstantial evidence. *Harris, supra.* The burglary statute in effect at the time of the offense, Ind.Code 35–43–2–1 (Supp. 1981), provided as follows:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person.

The evidence in this case clearly showed that someone broke out one of the clinic's windows early in the morning of April 11, 1980, and entered the clinic, tracking mud across the floor. Officer Hunter testified that he saw Roach fleeing from the clinic. Roach's shoes matched footprints outside the clinic's window, and glass embedded in one of his shoes matched glass in the bag found outside the broken window. From this the jury could reasonably have concluded that Roach broke and entered the clinic. Further, absent evidence of some lawful intent, the jury could conclude from the time, force, and manner of the entry that Roach intended to commit the felony of theft. *Lisenko v. State,* (1976) 265 Ind. 488, 355 N.E.2d 841. The jury's verdict was supported by sufficient evidence.

The trial court's judgment is affirmed.

MILLER and CONOVER, JJ., concur.