Eugene MORRIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 278S40.

Supreme Court of Indiana.

Jan. 15, 1979.

Terry C. Gray, Gary, for appellant.

Theo. L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted of first degree murder and sentenced to life imprisonment.

The decedent, five-month-old Rollin Morris, had been born in September, 1976. In February, 1977, appellant's wife left him and the baby at home while she went to the store. Upon returning about 15 minutes later, she found the baby severely burned on his left side. The wounds were dressed and were beginning to heal when on March 8, 1977, appellant was engaged in an argument with his wife. When Rollin began to whine, appellant took him, laid him on the floor, and began hitting him in the face. He then hit the baby's head on the floor several times. The baby died later from a skull fracture and lacerations of the brain.

Appellant contends the State failed to produce sufficient evidence of probative value from which the jury could have inferred each of the elements of the charged offense. He first claims the State did not sustain its burden of proving he was sane at the time of the crime. The two court-appointed psychiatrists testified that they

were of the opinion that appellant was suffering from a mental disease and consequently was unable to appreciate the wrongfulness of his acts or conform his conduct to the requirements of the law. However, expert testimony is not the only evidence which the jury can consider in determining the issue of sanity. All the facts and circumstances surrounding the events, as well as lay testimony regarding appellant's appearance and conduct, may be considered, and the jury may accept or reject the statements of any or all witnesses, including psychiatrists. *Stamper v. State* (1973) 260 Ind. 211, 294 N.E.2d 609; *Moore v. State* (1973) 260 Ind. 154, 293 N.E.2d 28.

■ Several lay witnesses in the case at bar testified as to appellant's appearance and conduct. His wife stated that, other than his beating of the child, appellant appeared and acted normal during the day. Appellant's brother-in-law saw him on March 8, 1977, and appellant appeared normal. Another witness saw him around Christmas, 1977, and also on the day following the child's death, and he appeared and acted normal. A fourth witness saw him on March 9, 1977, and he appeared normal. A fifth witness, a Lake County welfare case worker, had seen him several times in recent months and he always had acted and appeared sane. The two arresting officers testified that he was normal when arrested on March 12, 1977. Three policemen at the Lake County jail stated that he was normal during his booking and stay there. Finally, an employee of the Recorders Court in Detroit, Michigan, testified that she had seen appellant one and one-half years ago, and that he was normal. All in all, eleven lay witnesses gave testimony that in the time before, during and after the offense, appellant appeared and acted normal. This evidence is more than sufficient evidence from which the jury could have concluded that appellant was sane at the time of the crime. Its verdict cannot now be disturbed.

■ Appellant next claims the State failed to prove the elements of malice, purpose and premeditation as required by IC § 35–13–4–1 [Burns 1975]. Both malice and purpose may be inferred by the jury from the circumstances of the crime, the nature of the attack upon the victim, or from any deliberate or cruel act by one person against another. *Martin v. State* (1978) Ind., 372 N.E.2d 181. As in *Martin,* appellant's act of striking his child could have been seen by the jury as a deliberate act of cruelty, calculated to cause great bodily harm. Premeditation, which also may be inferred from the facts and circumstances surrounding the killing, need not long be deliberated upon, but may occur merely an instant before the act. *Barnes v. State* (1975) 263 Ind. 320, 330 N.E.2d 743. It is clear from the facts adduced at trial regarding the burning and beating of the child that the jury could well have inferred that this killing was perpetrated purposely and with premeditated malice.

■ Appellant next contends the trial court erred in permitting the instructions to be sent to the jury room. Although jury instructions are generally not to be sent to the jury room during deliberations, this Court has held that it is harmless error to do so if the instructions are first read in open court in the presence of the parties and their attorneys. *Jameison v. State* (1978) Ind., 377 N.E.2d 404. In the case at bar, the trial court orally instructed the jury in open court in the presence of appellant, his attorney, and the prosecutor. The error in sending the instructions to the jury room, therefore, was harmless.

Appellant next makes a series of arguments that four separate motions for mistrial should have been granted by the trial court. The granting or denial of a motion for mistrial lies within the sound discretion of the trial court and will be reversed only where a clear abuse of such discretion is shown. *Whitten v. State* (1975) 263 Ind. 407, 333 N.E.2d 86.

■ First, when appellant's wife was on the witness stand, the prosecuting attorney asked the following question: "So the only thing that you thought was abnormal [about appellant's conduct] were these criminal acts?" The trial court immediately sus-

tained an objection, overruled a motion for mistrial and admonished the jury as follows:

"The Prosecutor referred to the conduct of the defendant as being criminal. That is not proper. That is the function of a jury to determine whether or not the conduct of the individual on trial in the criminal court is criminal or not. I am going to order that stricken from the record and admonish you to disregard entirely her characterization of the conduct of the defendant as being criminal. You all understand that?"

The jurors thereupon replied, "Yes." The prompt admonishment by the trial court cured any error and made the likelihood of any substantial prejudice to the appellant highly remote. *Dewey v. State* (1976) 264 Ind. 403, 345 N.E.2d 842.

■ Second, appellant alleges the trial court erred in denying his motion for mistrial after the court permitted the State to use three additional witnesses at trial when appellant had not been afforded an opportunity to examine them prior to trial. The remedy in such a situation is to object or move for a continuance. *Henson v. State* (1976) 265 Ind. 233, 352 N.E.2d 746. In the case at bar, when the first witness was called, appellant objected and moved for a mistrial. The trial court overruled the objection and motion but recessed the trial for ten minutes, directing the prosecutor and defense counsel to take the witness to the conference room and interview him. When the court reconvened, defense counsel stated his satisfaction and willingness to proceed. The same procedure was used when the other two witnesses were called. The circumstances here were somewhat unusual. These three witnesses were flown in from Detroit for the trial. Their testimony dealt largely with facts and circumstances bearing on the issue of sanity. Appellant was given ample time to examine them before their testimony and he subsequently agreed to proceed with the trial. Under such circumstances, appellant was not prejudiced or placed in grave peril by the trial court's action. We, therefore, hold that the trial court committed no error.

■ Third, appellant moved for a mistrial when, during the examination of one of the psychiatrists, the prosecutor asked: "Doctor, would this defendant kill again?" The motion was denied, but an objection to the question was sustained. This issue, however, was not included in the motion to correct errors and, therefore, is waived. Ind.R.Tr.P. 59(G); *Spivey v. State* (1971) 257 Ind. 257, 274 N.E.2d 227. Further, the objection was in fact sustained and we can discern no substantial prejudice from the mere asking of the question.

■ Fourth, appellant complains that his motion for mistrial should have been granted when, during final argument, the prosecuting attorney proceeded to read one of the court's instructions on sanity. There is no error here in that the right to argue forcefully for a given result in a criminal case includes the right to refer to the instructions which will be given. *Shelby v. State* (1972) 258 Ind. 439, 281 N.E.2d 885.

■ Finally, appellant argues that the State's final summation *in toto* denied him a fair trial. In his brief to this Court, appellant has dissected nearly every statement made by the prosecutor and claims they all show fundamental error. However, only the argument regarding competency to stand trial and sanity was raised in the motion to correct errors. The other issues, therefore, must be deemed waived. Ind.R.Tr.P. 59(G); *Spivey v. State, supra.* Nevertheless, had they not been waived, there was no error.

Admittedly, the prosecutor's argument was heated, and, at times, could be described as overly enthusiastic; but we must bear in mind that this was no ordinary crime. Here was a man charged with the brutal, savage murder of a five-month-old baby. As we said in *Shelby v. State, supra,* the prosecutor has an equal right to argue the State's side of the case forcefully and to discuss the evidence pertinent thereto. We can perceive nothing unfair or prejudicial about permitting the prosecutor to argue his case in such a manner so long as his

statements are reasonably calculated to sway the jury to the State's point of view in light of the evidence adduced at trial, and so long as he makes no deliberate distortions or improper comments. Here, the argument of the prosecutor was forceful, but not unfair or misleading.

 With regard to the issue properly preserved, the prosecutor, in referring to an instruction the trial court would be giving, stated:

"One part I'd like to read is if the court finds by a preponderance of the evidence that the defendant is presently mentally competent, the defendant shall be discharged. I'd ask you to remember when you go back to the jury room that both Doctor Hogle and Doctor Gutierrez found that the defendant is presently competent to stand trial."

Defense counsel objected and moved for a mistrial. The court overruled the motion for mistrial but ordered the prosecutor to read the remainder of the instruction. Appellant now argues the above statements misled the jury, confused them as to the standards for insanity and competency to stand trial, and essentially requested them to consider the consequences of finding him not guilty by reason of insanity.

At the prompting of the trial court, the prosecutor did, in fact, read the rest of the instruction to the jury. The trial court, of course, read the entire instruction to the jury at the close of the arguments. The instruction in essence stated that if appellant were found not guilty by reason of insanity, he would be subject to civil commitment proceedings. We see nothing erroneous, misleading or confusing about this argument. The prosecutor was merely asking the jury to consider only the evidence at trial and not the post-trial consequences of a verdict of not guilty by reason of insanity. Any possible confusion created by the earlier reference to the psychiatrists' finding appellant competent to stand trial was corrected by the subsequent reading of the instruction by the prosecutor and the court. "Unless there is abuse of the discretionary control of [the] trial court over argument which is clearly prejudicial to the rights of the accused, the ruling of the trial court should not be disturbed." *Owens v. State* (1975) 263 Ind. 487, 501, 333 N.E.2d 745, 752. We find no abuse of discretion in the case at bar; and since the argument did not, in our view, place appellant in "grave peril", we cannot reverse his conviction. *Maldonado v. State* (1976) 265 Ind. 492, 355 N.E.2d 843.

The judgment of the trial court is in all things affirmed.

DeBRULER, HUNTER, PIVARNIK and PRENTICE, JJ., concur.