# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DANIEL J. VANDERPOOL**
Vanderpool Law Firm, P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHAN STEPHENS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1306-CR-518 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, Judge
Cause No. 85C01-1207-FC-569

**June 13, 2014**

**OPINION - FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Jonathan Stephens ("Stephens") appeals his conviction for Class C felony criminal confinement.[1]

We affirm.

## ISSUES

1. Whether sufficient evidence supports Stephens's criminal confinement conviction.

2. Whether Stephens received ineffective assistance from his trial counsel.

3. Whether the prosecuting attorney committed misconduct during closing argument.

## FACTS

On July 3, 2012, Stephens's wife, Brittany Stephens ("Brittany"), her sister, Hannah Dickerhoff ("Dickerhoff"), and Brittany's children went to the YMCA in Wabash to swim. Stephens went to the YMCA to talk to Brittany. Stephens wanted to spend time with Brittany, but she did not want to be with him. They began to argue, and another visitor at the YMCA called the police. Officer Chad Galligan ("Officer Galligan") with the Wabash City Police Department responded to the call. Stephens left the YMCA before Officer Galligan arrived. The officer spoke with Brittany, and she explained that she and Stephens were arguing. She also told Officer Galligan that the confrontation did not get physical, and Stephens decided to leave. Officer Galligan left the scene once he felt the situation was under control.

---

[1] IND. CODE § 35-42-3-3(b)(1).

2

Shortly after Officer Galligan left, Stephens returned to the YMCA and began to argue with Brittany again. Dickerhoff was outside of the YMCA with them, and she witnessed Stephens drag Brittany to his car and place her inside. Fearing for her sister's safety, Dickerhoff entered the backseat of Stephens's vehicle. Stephens then drove away from the YMCA. Stephens drove Brittany and Dickerhoff around Wabash while continuing to argue with Brittany. Eventually, Stephens began to drive out of Wabash toward Largo. Both Brittany and Dickerhoff told Stephens several times to take them back to the YMCA or let them out of the car. He refused and continued to drive.

Dickerhoff then called 911, told the operator that she and her sister were in Stephens's car, and that he would not let them out. Brittany and Dickerhoff attempted to get out of the car, but the 911 operator told them not to exit the car while it was moving. Dickerhoff's call to 911 was disconnected because Stephens reached into the backseat, snatched her phone, and took out its battery. Stephens stopped the car near a drive-in movie theater. He then jumped into the backseat, opened the door, and pushed Dickerhoff out of the car. Dickerhoff landed on gravel and cut her hand. Stephens drove off, and Dickerhoff went to the theater to call for help. The police eventually found Stephens and Brittany and placed Stephens under arrest.

On July 10, 2012, the State charged Stephens with two Class C felony counts of criminal confinement for confining Brittany and Dickerhoff, interference with the

3

reporting of a crime,[2] and battery of Dickerhoff,[3] both Class A misdemeanors. The State

also alleged that Stephens was an habitual offender.[4]

The trial court began a jury trial on April 16, 2013. During trial, Brittany

recanted, stating that she entered Stephens's car voluntarily and did not ask to be let out.

The jury convicted Stephens of battery and one count of criminal confinement for

confining Dickerhoff. Stephens admitted that he was an habitual offender. On May 16,

2013, the trial court sentenced Stephens to eight (8) years on the criminal confinement

conviction, one (1) year on the battery conviction, and eight (8) years for being an

habitual offender. The trial court ordered that the battery conviction run concurrent to the

conviction for criminal confinement. The trial court also ordered that the habitual

offender enhancement be served consecutively to the criminal confinement charge.[5]

Stephens now appeals. Additional facts will be added as necessary.

<u>DECISION</u>

Stephens claims that: (1) his conviction for criminal confinement is not supported

by sufficient evidence; (2) that his trial counsel rendered ineffective assistance; and (3)

---

[2] I.C. § 35-45-2-5.

[3] I.C. § 35-42-2-1.

[4] I.C. § 35-50-2-8.

[5] Here, the trial court erred. It is well settled that an "habitual offender finding does not constitute a separate crime nor does it result in a separate sentence, rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001) (citing *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997); *Pinkston v. State*, 436 N.E.2d 306, 307-08 (Ind. 1982)). Therefore, we remand to the trial court with instructions to correct the sentencing order, abstract of judgment, and chronological case summary to reflect that the eight (8) year habitual offender enhancement serves as an enhancement of Stephens's Class C felony criminal confinement conviction.

4

that the prosecuting attorney engaged in misconduct during closing argument, resulting in fundamental error. We address each of these claims separately.

1. Sufficiency of Evidence

Stephens contends that his conviction is not supported by sufficient evidence because Dickerhoff voluntarily entered his car. Stephens further claims that Dickerhoff knew that he was going to leave the YMCA with her sister and he should not have been convicted.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted).

To convict Stephens as charged, the State had to show that Stephens knowingly or intentionally confined Dickerhoff without her consent and that the offense was committed with a vehicle or caused her bodily injury. IND. CODE § 35-42-3-3(b)(1). "A person engages in conduct 'knowingly' if the person is aware of the high probability that he or she is doing so." I.C. § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-

5

2(a). To "confine" means "to substantially interfere with the liberty of a person." I.C. § 35-42-3-1.

The evidence shows that Dickerhoff entered Stephens's vehicle after witnessing him drag Brittany to his vehicle. Stephens left the YMCA and began driving around the Wabash area. Stephens ignored Dickerhoff's repeated pleas to let her out of the car. Eventually, Stephens even drove to another city and did not stop to let Dickerhoff out of the vehicle. When Dickerhoff called 911, Stephens still did not stop the car to let her go. Instead, he later stopped, grabbed Dickerhoff's phone, and removed its battery.

In this case, there is ample evidence from which a jury could conclude that Stephen criminally confined Dickerhoff. *See, e.g.*, *Daniels v. State*, 408 N.E.2d 1244, 1248 (Ind. 1980) (Defendant guilty of criminal confinement when he drove the victim around without her consent). Accordingly, sufficient evidence supports Stephens's conviction for criminal confinement.

## 2. Ineffective Assistance of Counsel

Stephens argues that his trial counsel was ineffective for failing to object to a line of questioning revealing that a no-contact order was in effect between Stephens and Brittany at the time of the offenses. He believes that had this information been kept from the jury, "there [was] a high probability that one or all of the verdicts would have been different[.]" (Stephens's Br. 19).[6]

---

[6] We note that because Stephens has presented a claim of ineffective assistance of trial counsel on direct appeal, he cannot assert this claim in any petition for post-conviction relief, regardless of whether he alleges different grounds. *See Sawyer v. State*, 679 N.E.2d 1328, 1329 (Ind. 1997).

6

A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *reh'g denied*, *cert. denied*. "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *French*, 778 N.E.2d at 824. Here, we can resolve Stephens's challenge with a prejudice inquiry.

Stephens has failed to show any prejudice caused by trial counsel's failure to object to the line of questioning regarding the no-contact order. As we have just concluded, there was sufficient evidence to convict Stephens of criminal confinement, even without mention of the no-contact order. In light of Dickerhoff's testimony about the nature of her confinement, corroborated by her 911 call, the jury likely would have reached the same verdict even if they had not known of the no-contact order. Therefore, Stephens's claim of ineffective assistance of trial counsel fails.

3. Prosecutorial Misconduct

Stephens claims that the prosecutor committed misconduct when he referred to Stephens as a "knucklehead," "yahoo," "bully," and "not a noble heroic guy" during

7

closing argument. In addition, Stephens claims that the prosecutor requested that the jury find him guilty for reasons other than his guilt. However, when the statements occurred, Stephens did not object.

In reviewing a properly preserved claim of prosecutorial misconduct, we must first determine whether the prosecutor's conduct was improper. *Newsome v. State*, 686 N.E.2d 868, 875 (Ind. Ct. App. 1997). If we determine the conduct was improper, we must then determine whether, under all of the circumstances, the prosecutor's misconduct placed the defendant in a position of grave peril. *Id*. In deciding whether the defendant was placed in grave peril, we consider the probable persuasive effect of the misconduct on the jury's decision. *Id*.

"[A]n appellate claim of prosecutorial misconduct presented on appeal in the absence of [a] contemporaneous trial objection will not succeed unless the defendant established not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error." *Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Fundamental error makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . presenting an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

As to Stephens's allegation of name-calling, our Supreme Court has stated that:

> [T]he prosecutor has an equal right to argue the State's side of the case forcefully and to discuss the evidence pertinent thereto. We can perceive nothing unfair or prejudicial about permitting the prosecutor to argue his

8

case in such a manner so long as his statements are reasonably calculated to sway the jury to the State's point of view in light of the evidence adduced at trial, and so long as he makes no deliberate distortions or improper comments.

*Morris v. State*, 384 N.E.2d 1022, 1026-27 (Ind. 1979).

The challenged statements were as follows:

Well, what do we-we know for sure from this case? Well, we know for sure that Jonathan and his wife Brittany had a-sounds like a tumultuous type of relationship. That they're down at the YMCA causing a big ruckus. You people went down there to work out, they take their families down there to get a work out, to enjoy the facilities, and these *yahoos* are down there causing a big scene.

\* \* \* \*

You heard [Dickerhoff] yesterday. And [Dickerhoff] doesn't like this guy and doesn't like the fact that her sister is married to this guy. Would you? If he does that type of stuff to your sister? This is a seventeen year old girl, now eighteen year old girl, still in-in school. She has no motivation to come in here and lie about anything. She's trying to protect her older sister from this *knucklehead*.

(Tr. 175) (emphasis added).

\* \* \* \*

It's gotta be that evidence that firmly convinces you. If you-you think he might be guilty, then-or you know, then you have to find him not guilty. If it's maybe he did it-folks, listen to the-listen and play back (inaudible) by hand. Go back and listen to that call again. There should be no question in your mind what was going on here. And for three-hours- at least from 8:00 through 10:00, he wasn't letting these ladies out of the car. He was confining them in that car not letting them out. Being the big *bully* that he is. Wouldn't let them call you know on their cell phone or using the On-Star system to get medical assistance. For two hours driving around like that and he finally pushes her out of the back and just leaves her there like a-I guess like a piece of trash on the side of the road.

(Tr. 184-185) (emphasis added). After Stephens's attorney argued that Stephens helped

Dickerhoff out of the car, the prosecutor responded during rebuttal as follows:

9

Is Jonathan Stephens the hero, is he the honorable man that they portray him to be? He helped her out of the car. Really? Made it sound like, oh, he-[Dickerhoff], could you please get out of the car now? Is that what was going on? Somehow she injured her hand. The direct evidence is what [Dickerhoff] told you. [Dickerhoff] told you that she was in the car, she witnessed what happened, she testified-that's direct evidence. She's telling you what happened. All kinds of cases go through here, and there's some cases we have tons of evidence, and all of this stuff, and in this case, because of the facts of the case, you got what you got. You got 911 calls and you've got photos of that. But you heard from the people who were involved in this. He's not *a noble heroic guy*.

(Tr. 190-191) (emphasis added).

In this case, the prosecutor's remarks are along the lines of forceful argument permitted by our Supreme Court's decision in *Morris*. Here, the prosecutor is trying to sway the jury toward his view that Stephens confined and battered Dickerhoff. Therefore, there was nothing improper about the above-mentioned remarks.

On the other hand, the prosecutor ended his closing argument as follows: "These women shouldn't have been treated like that. And hold him responsible for the way he treated those women that day because if you don't, nobody will." (Tr. 185). This argument could be construed as inappropriate because "[i]t is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt." *Maldonado v. State*, 355 N.E.2d 843, 849 (Ind. 1976). While the prosecutor was appealing to the jurors to find the Stephens guilty based upon the evidence, it also could be understood to mean that Stephens' conviction would be a community service. "A prosecutor may not engage in argument which lends itself to such understanding." *Id*. at 849. However, because there was not a contemporaneous objection, Stephens must show that the prosecutor's improper argument constitutes fundamental error. *Booher*, 773 N.E.2d at

10

818. The totality of the circumstances shows that the improper comments had little persuasive effect on the jury. Stephens argues that the prosecutor's comments placed him in grave peril because it encouraged the jury to infer that Stephens was a bad person who was more likely to commit the crimes charged. However, Stephens has not shown how the prosecutor's comments placed him in grave peril. The jury's verdict is supported by evidence, which is what had the more persuasive effect.

During trial, Brittany essentially recanted and stated that she got into the car voluntarily and did not feel that Stephens was confining her. It appears that the jury acknowledged this evidence by acquitting Stephens of confining Brittany. It also appears that the jury acquitted Stephens of interference of reporting a crime because Dickerhoff was actually able to reach 911 and make a report to law enforcement. Again, the evidence, and not the prosecutor's inappropriate comment, appears to have helped the jury reach its verdict. Finally, and as stated earlier, Brittany's 911 call corroborated her testimony and offered more persuasive effect on the jury's verdict than the prosecutor's inappropriate comment. Thus, Stephens has not shown that the prosecutor placed him in a position of grave peril. Accordingly, we affirm Stephens's conviction for criminal confinement.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

11